IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,** | : | **CIVIL NO. 1:CV-09-02134** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **E. GEE,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Plaintiff Kareem Hassan Milhouse ("Milhouse"), an inmate currently

incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-

Lewisburg"), filed this *Bivens*[1]-styled complaint against several USP-Lewisburg

officials[2] (collectively, "Defendants") on November 2, 2009, as amended May 10,

2010.  (Doc. 30.)  Milhouse alleges various constitutional violations against

Defendants, including excessive use of force, conditions of confinement, a strip

search,[3] and verbal harassment.

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials.  *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relief upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Named as Defendants are Edward Gee, Senior Officer; Robert Marr, Correctional Officer; T. Crawford, Correctional Officer; C. Miorana, Associate Warden; B.A. Bledsoe, Warden; B. Trate, Captain; S.V. Heath, Lieutenant; Frank Perrin, Special Investigative Agent; Eric Stuart, Lieutenant; John Adami, Unit Manager; and, Holly Moffett, Correctional Officer.

[3] In the instant motion, Defendants argue that Milhouse has failed to state a constitutional claim for an alleged strip search conducted by Defendant Crawford on January 29, 2010 after

Before the court is a motion to dismiss and for summary judgment filed on behalf of Defendants. (Doc. 42.)  For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part.

## I.   Background

### A.   Facts

The allegations in Milhouse's amended complaint stem from incidents occurring in late 2009 and early 2010.  In support of their motion to dismiss and for summary judgment, Defendants have submitted a statement of material facts.[4] (Doc. 48.)  Milhouse has submitted a counter statement of material facts.  (Doc. 77.)  Thus, the following facts are undisputed except where noted.

#### 1.   Excessive Use of Force

---

Milhouse was escorted to the Psychology Department.  (Doc. 47 at 28-29.)  In support, Defendants assert that proper procedures were followed in the handling of Milhouse on that date. (*Id.*)  Further, they argue that even if Defendant Crawford had conducted a visual search of Milhouse prior to returning him to a cell, such action would not constitute a constitutional violation.  (*Id.*)  In his brief in opposition to the motion and counter statement of material facts, Milhouse concedes that he was not strip searched on that date by Defendant Crawford.  (See Doc. 76 at 9; Doc. 77 ¶¶ 78-80.)  Thus, the court need not address this claim and it will be dismissed.

[4] Attached as exhibits to Defendants' brief in support of the instant motion are declarations of Defendants Crawford, Gee, Marr, and Moffat, which verify the accuracy of Defendants' statement of material facts.  (*See* Doc. 47-2, Exs. 1-4.)

2

In his amended complaint, Milhouse complains of two incidents of alleged excessive use of force on October 23, 2009. The following facts relate to the first incident. On October 23, 2009, Defendants Marr, Gee, and Crawford were assigned to USP-Lewisburg's Special Housing Unit ("SHU"), a secure unit where inmates are confined to their cells for twenty-four (24) hours a day except for recreation periods, medical appointments, and scheduled trips or visits. (Doc. 48 ¶¶ 1, 6, 7.) On this day, Defendant Marr was assigned to work as the Number One Officer (1st Floor), and was responsible for opening and closing individual cell doors by way of a control panel box. (*Id.* ¶¶ 1, 2.) When staff members approach cells to determine if inmates want to leave their cells to participate in recreation, they notify Defendant Marr of which cell doors to open and close. (*Id.* ¶ 3.) Defendant Crawford was assigned to work as an Escort Officer. (*Id.* ¶ 6.) And, Defendant Gee was conducting searches of inmate cells on the SHU's first floor.[5] (*Id.* ¶ 7.)

On the morning of this day, October 23, 2009, Milhouse did not go to recreation. (*Id.* ¶ 4.) However, his cellmate chose to go to recreation, and as a result Defendant Marr opened the cell door. (*Id.* ¶ 4, 5.) Milhouse was handcuffed

---

[5] Milhouse counters that Defendant Gee only searched his cell on this date. (Doc. 77 ¶ 7.)

with his hands behind his back so that his cellmate could be escorted to recreation.
(*Id*. ¶ 9.)  He was also informed at this time that Defendant Gee would be
conducting a search of the cell for contraband.  (*Id*. ¶ 8.)  As Defendant Gee held
Milhouse by his restraints directly outside the cell, Milhouse told him that he
would not go to a holding cell during the search.  (*Id*. ¶¶ 9, 10.)  Defendant Gee
gave him several direct orders to go to the holding cell, but Milhouse refused,
stating that he wanted to change his shoes because he was wearing only shower
shoes and socks.  (*Id*. ¶¶ 11, 12.)  Defendant Gee then attempted to escort Milhouse
to the holding cell on the first floor, but Milhouse resisted by refusing to move and
struggling.  (*Id*. ¶¶ 13, 14.)  At this time, Defendant Crawford was inside the
SHU's Officer's Station on the first floor, and heard a staff member directing an
inmate to permit a cell search.  (*Id*. ¶ 17.)  He also heard keys rattling and thought
that there might be a confrontation occurring between staff and an inmate.[6]  (*Id*. ¶
18.)  As a result, Defendant Crawford exited the Officer's Station and observed
Milhouse struggling with staff in the hall.  (*Id*. ¶ 19.)  He and another staff member
immediately responded in order to assist Defendant Gee in escorting Milhouse to
the holding cell.  (*Id*. ¶¶ 15, 20.)  Defendant Crawford took one of Milhouse's arms
while Defendant Gee took the other arm.  (*Id*. ¶ 21.)  As they escorted him,

---

[6] Milhouse counters that there were no keys rattling.  (Doc. 77 ¶ 18.)

Milhouse continued to resist their efforts and drag his feet.  (*Id*. ¶ 22.)  When they arrived at the holding cell, the door was open and they placed Milhouse in the cell without incident.  (*Id*. ¶ 23.)  The holding cell is a bare room with three walls and a metal grill and door serving as the fourth wall.  (*Id*. ¶ 25.)  Neither Defendant Gee or Crawford observed Milhouse striking his head on the wall.  (*Id*. ¶ 24.)

After placing Milhouse in the holding cell, Defendant Gee searched his cell.  (*Id*. ¶ 26.)  He did not destroy any property or bedding, but did remove two or three black metal binder clips since a recent policy change prohibits inmates from possessing such items.  (*Id*. ¶¶ 27-29.)  As a result of the incident, Defendant Gee wrote an incident report charging Milhouse with a Code 307 violation ("Refusing to Obey an Order of Any Staff Member"), a Code 312 violation ("Insolence Towards a Staff Member"), and a Code 398 violation ("Interfering with Staff in the Performance of Duties").  (*Id*. ¶ 31.)  Milhouse later appeared before the Unit Discipline Committee and was found guilty of the Code 307 violation.  (*Id*. ¶ 32.)  Consequently, he was sanctioned with a loss of commissary privileges for 240 days.  (*Id*. ¶ 33.)

Milhouse provides a different version of this incident in his counter statement of facts.  Initially, Milhouse does not dispute that Defendant Gee wanted to search his cell and held him by his restraints outside the cell while the cellmate

was escorted from the cell.  (Doc. 77 ¶ 9.)  However, Milhouse denies that he told Defendant Gee that he would not go to a holding cell during the search.  (*Id.* ¶ 10.) Rather, Milhouse stated that he wanted to put his pants on first.[7]  (*Id.*)  He further asserts that he was talking with Defendant Gee rather than resisting an escort to the holding cell.  (*Id.* ¶¶ 13, 14.)  In fact, he asserts that staff were not attempting to escort him to a holding cell until Defendant Crawford arrived and "aggressively grabbed" him.  (*Id.* ¶ 19.)  Milhouse states that he never resisted the officers, and when they arrived at the holding cell, Defendant Crawford pushed him into the cell and he hit his head on the wall, causing a cut.  (*Id.* ¶ 23.)  Afterwards, Defendant Crawford stated, "You ain't gon do shit, motherfucker."  (*Id.* ¶ 24.)

Milhouse does not dispute that Defendant Gee searched his cell.  (*Id.* ¶ 26.) However, he asserts that Defendant Gee removed food items, prayer oil, legal materials, and a mirror, and left his personal property and bedding "disorganized" and "in disarray."[8]  (*Id.* ¶¶ 27-29.)  He also asserts that when his cellmate asked Defendant Gee why he took his coffee, Defendant Gee answered, "You should be mad at Milhouse."  (*Id.* ¶ 30.)  Defendant Gee denies making this statement.  (Doc. 48 ¶ 30.)

---

[7] Milhouse denies stating that he wanted to change his shoes.  (Doc. 77 ¶ 11.)

[8] Milhouse has not asserted a claim under the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. §§ 1346, 2671 *et seq*., with respect to a loss of property.

The following facts are related to the second incident of alleged excessive use of force on October 23, 2009.  On this day, Defendant Marr was assigned to the task of retrieving the noon meal food trays from the cells on the first floor.  (*Id.* ¶ 35.)  In doing so, Defendant Marr would approach each cell door and open the food slot ("wicket") with a key so that the inmates could pass their used food trays through the wicket to Defendant Marr.  (*Id.* ¶ 36.)  Defendant Marr would then place the trays on a food cart so that they could be returned to the Food Services Department.  (*Id.*)  He would then lock the wicket and proceed to the next cell.  (*Id.* ¶ 37.)

When Defendant Marr was retrieving the food trays from Milhouse's cell, his cellmate handed Defendant Marr the first food tray.  (*Id.* ¶ 38.)  Defendant Marr thought the cellmate was reaching for the second food tray, but instead, the cellmate threw a cup full of feces and urine out of the wicket at Defendant Marr.  (*Id.* ¶ 39.)  As a result of the cellmate's actions, Defendant Marr's arms, chest, and pants were covered in feces and urine.  (*Id.* ¶ 41.)  Defendant Marr's immediate reaction was to shove the first food tray back through the wicket and secure the wicket so that no other items could be thrown out of the cell.  (*Id.* ¶ 40.)  Once the wicket was secured, Defendant Marr went to the Officer's Station and notified the Shift Lieutenant of the incident.  (*Id.* ¶ 42.)  Subsequently, the Special Investigative

7

Staff ("SIS") arrived in the unit and took photographs of Defendant Marr's clothing.  (*Id*. ¶ 43.)  Defendant Marr then left the unit in order to change his clothes.  (*Id*. ¶ 44.)  Defendant Marr also wrote an incident report charging Milhouse's cellmate with assault.  (*Id*. ¶ 45.)  He did return to the unit that day, but did not leave the Officer's Station area or go down range to the inmate cells for the remainder of his shift.  (*Id*. ¶ 46.)  To the best of Defendant Marr's knowledge, Milhouse was not involved in the incident.  (*Id*. ¶ 47.)

In his counter statement of material facts, Milhouse asserts that he saw his cellmate hand the second food tray to Defendant Marr and leave the wicket area. (Doc. 77 ¶ 39.)  He also states that he saw Defendant Marr throw the food tray and kick the wicket.  (*Id*. ¶ 40.)  He states that he did not see anything on Defendant Marr's chest or arms, and later saw him come back down range to the inmate cells. (*Id*. ¶¶ 41, 46.)  In fact, in his amended complaint, Milhouse claims that feces hit him in the left arm when Defendant Marr threw the tray back into the cell.  (Doc. 30-2 at 4.)

### 2.   Conditions of Confinement

In his amended complaint, Milhouse alleges several violations relating to his conditions of confinement.  (Doc. 30-2.)  The following facts are relevant to those claims.

8

### a.   <u>Mattress</u>

His first allegation relates to his cell's mattress, and the following facts are relevant.  Starting on September 22, 2009, Defendant Gee was assigned to work as the Number Two Officer (1ˢᵗ Floor) in USP-Lewisburg's SHU.  (Doc. 48 ¶ 48.)  Although Defendant Gee does not recall the exact date, he recalls conducting a search of Milhouse's cell and noticing that Milhouse did not have a mattress.  (*Id.* ¶ 49.)  Approximately one week later, Milhouse asked Defendant Gee where his mattress was and Defendant Gee told him that he would look into it.  (*Id.* ¶ 50.)  Defendant Gee asked another officer in the unit about the mattress and was told that it had been removed at the direction of the Captain.  (*Id.* ¶ 51.)  Defendant Gee had not been involved in this decision.  (*Id.* ¶ 52.)  Defendant Gee then informed Milhouse that the mattress had been removed at the direction of the Captain.  (*Id.* ¶ 53.)  In response, Milhouse asked him when it would be returned to him.  (*Id.* ¶ 54.)  Defendant Gee said he would look into it, and several days later after learning from the Captain that he could return it, Defendant Gee gave the mattress back to Milhouse that day.  (*Id.* ¶¶ 54, 55.)

In his counter statement of material facts, Milhouse asserts that Defendant Gee took his mattress.  (Doc. 77 ¶¶ 49, 52.)  He further counters that it was not Defendant Gee, but an individual named Reece who asked him about the mattress'

location.  (*Id*. ¶¶ 50, 51.)  While he does not deny that Defendant Gee informed him that the mattress was taken at the direction of the Captain, he asserts that he did so over a week after Milhouse had already filed a tort claim relating to the mattress.  (*Id*. ¶ 53.)

### b.    Other Cell Conditions

Milhouse also asserts complaints about other conditions in his cell, and the following facts are relevant.  Milhouse asserts that Defendant Crawford assigned him and his cellmate to cell 118 which had a dysfunctional shower, and that he remained in this cell for nineteen (19) days.  (*Id*. ¶ 56.)  He states that this cell had been in this condition for months.  (*Id*. ¶ 57.)  He also states that he requested to be moved several times.  (*Id*. ¶¶ 58, 59.)  Defendant Crawford denies these facts, countering that he was not aware that the cell had a dysfunctional shower, and if he had been aware, he would have either submitted a work order to have the shower repaired or moved Milhouse (or any other inmate) to another cell with a functional shower.  (Doc. 48 ¶¶ 56-59.)

Milhouse also asserts that on February 12, 2010, Defendant Crawford assigned him to cell 120 which did not have hot water.  (Doc. 77 ¶ 60.)  He states that he filed numerous requests for administrative remedies related to the hot water, but a work order was never submitted and instead he was moved to another

cell block that had no showers and smaller cells. (*Id.* ¶¶ 62, 64.) Defendant

Crawford denies that he knowingly assigned Milhouse to a cell with no hot water.

(Doc. 48 ¶ 60.) He asserts that at no time would he allow an inmate to occupy a

cell without drinking and toilet water. (*Id.* ¶ 63.) He further asserts that he would

have submitted a work order if he had been informed that the cell did not have

functioning water, and depending on when the work could be done, he would have

moved Milhouse (or any other inmate) to a cell with functioning water. (*Id.* ¶ 61.)

In support of these assertions, Defendants state that as a lockdown unit, staff are

present 24 hours a day, 365 days a year, and that additional staff conduct regular

visits to the SHU. (*Id.* ¶¶ 65, 66.) Milhouse could have raised his complaints with

any of those staff members in the unit. (*Id.* ¶ 67.) In his counter statement of facts,

Milhouse denies that staff are present at all hours of the day and that staff members

make regular rounds. (Doc. 77 ¶¶ 65, 66.)

Finally, Milhouse asserts that on October 23, 2009, Defendant Marr refused

to reset Milhouse's toilet. (Doc. 30-2 at 4.) In the instant motion, Defendants

explain that the toilets in the SHU are automatically reset every fifteen (15)

minutes, and that therefore, there was no reason for Defendant Marr to reset

Milhouse's toilet. (Doc. 48 ¶ 75.) Defendant Marr does not recall Milhouse

asking him to reset his toilet, and denies refusing to do so. (*Id.* ¶¶ 74, 76.) In

response, Milhouse asserts that the toilets are reset every thirty (30) minutes.  (Doc. 77 ¶ 75.)

In his amended complaint, Milhouse asserts that Defendant Crawford repeatedly denied him access to USP-Lewisburg's barbershop.  (Doc. 30-2 at 5.) In the instant motion, Defendant Crawford denies that he did not provide Milhouse with access to the barber.  (Doc. 48 ¶ 68.)  Although Defendant Crawford does escort inmates for haircuts, this is a routine task which can be accomplished by any of the officers assigned to the unit and occurs often.  (*Id*. ¶ 69.)  Specifically, inmates are normally provided access to the barber kit once every thirty (30) days by submitting a written request and staff will escort them from their cells to a holding cell.  (*Id*. ¶ 70.)  The inmate or his cellmate can then cut his hair.  (*Id*. ¶ 71.)  Once the inmate's hair is cut, the barber kit is recovered and an inventory is conducted.  (*Id*. ¶ 72.)  The inmate is then escorted back to his cell.  (*Id*. ¶ 73.)  In his counter statement of material facts, Milhouse counters only that he was denied access to clippers rather than a barber.  (Doc. 77 ¶ 68.)

### c.     Food Tray

In his amended complaint, Milhouse asserts that on December 11, 2009, Defendant Marr served him a food tray that was empty.  (Doc. 30-2 at 4.)  In the instant motion, Defendant Marr denies that he provided Milhouse with an empty

food tray on that day or any other day.  (Doc. 48 ¶ 77.)  In his counter statement of

material facts, Milhouse states that a Lieutenant Stampone brought him the meal

that day.  (Doc. 77 ¶ 77.)  Because Milhouse admits here that he received a meal on

that day, the court concludes that he has failed to establish a constitutional

violation with respect to denial of meals by Defendant Marr.  This claim therefore

will be dismissed.

### 3.   Verbal Harassment

In his amended complaint, Milhouse makes several complaints about verbal

exchanges between himself and Defendants Gee and Moffett.  Specifically,

Milhouse claims that on September 25, 2009 Defendant Gee asked him,

"Milhouse, you want my dick in your mouth?"  (Doc. 30-2 at 2.)  In the instant

motion, Defendant Gee denies that he was verbally abusive to Milhouse on that

day.  (Doc. 48 ¶ 85.)  He also describes how the previous day, September 24, 2009,

he wrote an incident report for Milhouse charging him with a Code 206 violation

("Making Sexual Proposals").  (*Id*. ¶ 86.)  Specifically, Milhouse had asked

Defendant Gee, "Can you do that for me?"  (*Id*. ¶ 87.)  Defendant Gee asked

Milhouse what he was referring to, and Milhouse stated, "I need my dick sucked,

can you do that for me?"  (*Id*. ¶ 88.)  As a result of this incident, Milhouse later

appeared before the Unit Discipline Committee and was found guilty of a Code

312 violation ("Being Insolent to Staff Member").  (*Id*. ¶ 89.)  He was sanctioned with 180 days loss of commissary privileges.  (*Id*. ¶ 90.)  In his counter statement of material facts, Milhouse denies the September 24, 2009 exchange.  (Doc. 77 ¶¶ 87, 88.)

In his amended complaint, Milhouse also claims that on October 16, 2009, Defendant Gee called him a "rat" loudly on the cellblock in order to cause friction between Milhouse and other inmates.  (Doc. 30-2 at 3.)  According to Milhouse, other inmates "pray[ ] on 'rats-informant[s]'," and therefore Defendant Gee called him a "rat" to jeopardize Milhouse's safety.  (*Id*.)  In the instant motion, Defendant Gee denies that he called Milhouse a "rat" on October 16, 2009.  (Doc. 48 ¶ 91.)

In the amended complaint, Milhouse also claims that on October 11, 2009, Defendant Moffett verbally harassed and assaulted him by calling him a "nigger and a piece of shit"and pushed him in the back.  (Doc. 30-2 at 6.)  In the instant motion, Defendant Moffett denies these claims, stating that on that date she was not even assigned to work in the same housing unit as Milhouse; rather, she was working as the Recreation Officer on the East Side of USP-Lewisburg that day. (Doc. 48 ¶¶ 92, 93.)  Further, her duties as a Recreation Officer do not require her to enter Milhouse's housing unit.  (*Id*. ¶ 94.)  In fact, not only does Defendant Moffett not recall having any contact with Milhouse that day, prior to Milhouse

14

filing this action, she did not even know Milhouse.  (*Id*. ¶ 94, 95.)  Since the

initiation of this suit, however, she has reviewed a photograph of Milhouse and is

aware he is an inmate housed at USP-Lewisburg.  (*Id*. ¶ 96.)  In his counter

statement of material facts, Milhouse states that Defendant Moffett is "quite

familiar" with him.  (Doc. 77 ¶ 96.)

Finally, in the amended complaint, Milhouse also claims that Defendant

Moffett "has threatened Plaintiff on several occasions and lastly on November 10,

2009."  (Doc. 30-2 at 6.)  Defendant Moffett denies this claim.  (Doc. 48 ¶ 97.)

### B.   **Procedural History**

Milhouse filed his second amended complaint on May 10, 2010.  (Doc. 30.)

On July 8, 2010, Defendants filed their motion to dismiss and for summary

judgment.  (Doc. 42.)  After the court granted Milhouse several extensions of time

to respond to Defendants' motion, (*see* Docs. 69 & 73), Milhouse filed a response

and counter statement of material facts on May 5, 2011, (Docs. 76 & 77.)  Thus,

the instant motion is now ripe for disposition.

### II.   **Standards of Review**

15

## A.    Motion to Dismiss

Defendants has filed a motion which, in part, seeks dismissal of the complaint on the grounds that Milhouse's complaint fails to state a claim upon which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The motion, however, goes beyond a simple motion to dismiss under Rule 12(b)(6) because it is accompanied by evidentiary documents outside the pleadings contravening Milhouse's claims.  Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  The court will not exclude the evidentiary materials accompanying Defendants' motion to dismiss because Milhouse has also been given a reasonable opportunity to present material relevant to the motion.  Thus, Defendants' motion to dismiss and for summary judgment shall be treated solely as seeking summary judgment.

## B.    Motion for Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32

(3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id*.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir.

17

1989)).

## III.   Discussion

As set forth above, Milhouse has alleged various constitutional violations involving excessive use of force, conditions of confinement, and verbal harassment.  In their brief in support of the instant motion, Defendants argue, *inter alia*, that Milhouse has failed to allege personal involvement of certain Defendants, and raise the issue of qualified immunity as to other Defendants.  The court will address these issues in turn.

### A.   Defendants Trate, Heath, Perrin, Stuart, Adami, Bledsoe and Maiorana

In his amended complaint, Milhouse claims that he sought to remedy the issues relating to his excessive use of force claims, conditions of confinement claims, and verbal harassment claims through Defendants Trate, Heath, Perrin, Stuart, Adami, Bledsoe and Maiorana.  In response, Milhouse claims, these Defendants either ignored his requests or failed to remedy his issues.  In the instant motion, Defendants Trate, Heath, Perrin, Stuart, Adami, Bledsoe and Maiorana argue that they should be dismissed from the case because Milhouse has failed to allege their personal involvement and therefore has failed to state a claim against them.  Viewing the facts in a light most favorable to Milhouse, the court agrees that Milhouse has failed to state a claim against these Defendants.

As a general rule, inmates do not have a constitutional right to a prison grievance system. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977); *Speight v. Sims*, 283 F. App'x 880, 881 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D.D.C. 1995) ("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable."). Furthermore, it is well established that in a suit brought under 42 U.S.C. § 1983,[9] a defendant must be shown to have had the personal involvement in an alleged constitutional violation, and the doctrine of *respondeat superior* will not support a finding of liability. *See Rode*, 845 F.2d at 1207. Because civil liability under § 1983[10] requires personal involvement by an official in the alleged deprivation of some constitutional right, it is apparent that a

---

[9] *See supra*, note 1 at 1.

[10] *See supra*, note 1 at 1.

19

mere "allegation that an official ignored a prisoner's letter of protest and request

for investigation of allegations made therein is insufficient to hold that official

liable for the alleged violations." *Greenwaldt v. Coughlin*, 93 Civ. 6551, 1995 WL

232736, at *4 (S.D.N.Y. Apr. 19, 1995).  Thus, in a case such as this one, where

Defendants Trate, Heath, Perrin, Stuart, Adami, Bledsoe and Maiorana's only

alleged involvement with Milhouse consists of a purported failure to respond to

Milhouse's complaints, that "failure of a prison official to provide a favorable

response to an inmate grievance is not a federal constitutional violation." *Gordon

v. Vaughn*, No. CIV. A. 99-1511, 1999 WL 305240, at *2 (E.D. Pa. May 12, 1999).

Because Milhouse has failed to state a claim against Defendants Trate, Heath,

Perrin, Stuart, Adami, Bledsoe and Maiorana, the motion for summary judgment

will be granted in favor of these Defendants.

## B.   <u>Eighth Amendment Claims</u>

As stated above, Defendants have raised the issue of qualified immunity in

response to Milhouse's Eighth Amendment claims related to excessive use of

force, conditions of confinement, and verbal harassment.  The doctrine of qualified

immunity provides that government officials performing "discretionary functions,"

are shielded from suit if their conduct did not violate a "clearly established

statutory or constitutional right[ ] of which a reasonable person would have

known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009).  This doctrine, known as "qualified immunity," provides not only a defense to liability, but "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Application of qualified immunity implicates two distinct inquiries.  The first evaluates whether the defendant violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated in part by Pearson*, 555 U.S. 223, 129 S. Ct. 808; *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007); *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006).  If the defendant did not commit a constitutional infraction, the court must dispose of the claim in the defendant's favor.  *Saucier*, 533 U.S. at 201.  If the defendant committed a constitutional violation, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted.  *Pearson*, 555 U.S. 223, 129 S. Ct. at 816; *Saucier*, 533 U.S. at 201-02.  A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates.  *Pearson*, 555 U.S. 223, 129 S. Ct. at 816.  Further, the Third Circuit has stated that "[A] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable

official would understand that what he is doing violates that right.'" *Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008) (quoting *Williams*, 455 F.3d at 191). This standard "'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Hubbard*, 538 F.3d at 236 (quoting *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005)).  The court is not required to conduct the inquiries sequentially,[11] and it may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  *Pearson*, 555 U.S. 223, 129 S. Ct. at 820.

Proceeding under the above framework, the court will examine Milhouse's Eighth Amendment claims to determine whether Defendants are entitled to qualified immunity, and whether summary judgment is warranted.

### 1.    Excessive Use of Force

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in

---

[11] In *Pearson*, the Supreme Court held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. 223, 129 S. Ct. at 818.

a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The prisoner need not show significant injury to state an excessive use of force claim. *Hudson*, 503 U.S. at 8, 10. However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de mimimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (citations omitted).

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley*, 475 U.S. at 321 (quoting *Rhodes*,

452 U.S. at 349 n.14)).  Prison officials "should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their

judgment are needed to preserve internal order and discipline and to maintain

institutional security."  *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547

(1979)).  As a general rule, judges should not second guess decisions made by

prison administrators faced with disturbances or other emergencies affecting prison

security.  *Id*. at 322.

As to the first incident of October 23, 2009, involving Defendants Marr,

Gee, and Crawford escorting Milhouse to a holding cell, Defendants concede that

Milhouse was subjected to the use of force by Defendants Crawford and Gee, but

not by Defendant Marr.[12]  (Doc. 47 at 22.)  However, Defendants argue that the

force was applied in a good-faith effort to restore discipline, not maliciously and

sadistically to cause harm to Milhouse.  (*Id*.)  They further argue that Defendants

Crawford and Gee used a minimal amount of force during the incident which did

not result in any injury to Milhouse.  (*Id*.)  Milhouse, however, counters that he

never resisted the officers during the incident and that Defendant Crawford

unnecessarily shoved him into the holding cell, causing the cut to his forehead.

---

[12] The court agrees with Defendants that, based on the undisputed facts, Defendant Marr was not involved in the escort to the holding cell beyond simply opening the cell door by way of a control panel box in order for Milhouse's cellmate to go to recreation.  Thus, this claim as to Defendant Marr will be dismissed.

(Doc. 76 at 5.)  Further, attached to his counter statement of material facts is a

medical record from October 30, 2009 noting that Milhouse had sustained an

injury to his head, a small cut, on October 23, 2009, and "still has a headache from

hitting head on wall."  (Doc. 77-1 at 29.)  Defendants have not replied to

Milhouse's counter statement of facts and argument.  Thus, the conflicting

accounts of what transpired create a genuine issue of material fact as to whether

Milhouse was subjected to excessive force on October 23, 2009 when he was

escorted to a holding cell and placed in that cell.  Stated otherwise, even if

Milhouse is determined to have been assaulted, there remains substantial disputed

facts as to whether the assault was an excessive use of force under the standard set

forth in *Hudson*.  Accordingly, Defendants' motion for summary judgment will be

denied as to Defendants Gee and Crawford and the matter will proceed to trial on

this claim.[13]

---

[13] Milhouse's claims for money damages against these individual Defendants in their
official capacities are barred by the doctrine of sovereign immunity.  While *Bivens* allows claims
for damages against federal agents, it does not allow claims for damages to be brought against
federal agencies, regardless of any waiver of sovereign immunity.  *F.D.I.C. v. Meyer*, 510 U.S.
471, 486 (1994).  And, actions against individuals in their official capacities are "in all respects
other than name" suits against the government entity.  *Kentucky v. Graham*, 473 U.S. 159, 166
(1985).  As such, Milhouse's official capacity claims are claims against the United States, which
cannot be sued for money damages without an "unequivocally expressed" congressional waiver
of sovereign immunity.  *United States v. Idaho ex rel. Director, Idaho Dep't of Water Res.*, 508
U.S. 1, 6 (1993); *United States v. Testan*, 424 U.S. 392, 400 (1976).  The United States has not
waived its sovereign immunity from suits for damages arising from constitutional violations.
*See, e.g., Keene Corp. v. United States*, 700 F.2d 836, 838 n.3 (2d Cir. 1983).  Thus, this suit
may proceed as to these Defendants in their individual capacity only.

Turning to the second incident of October 23, 2009, it is apparent that Milhouse was not involved in the food tray incident occurring between his cellmate and Defendant Marr.  Reading the facts in a light most favorable to Milhouse, the fact that he was hit with feces when Defendant Marr instinctually reacted to the cellmate throwing a cup of feces and urine at him by shoving the food tray back through the wicket and securing it is unfortunate for Milhouse.  However, the court cannot conclude that Defendant Marr's reaction was a malicious and sadistic use of force intended to cause harm to Milhouse.  *See Hudson*, 503 U.S. at 7.  Rather, it was essential to internal order and institutional security, as well as Defendant Marr's own health and safety, that he keep the situation contained.  *See Whitley*, 475 U.S. at 321-22.  The undisputed facts do not demonstrate that this incident involved Milhouse at all, other than by his very presence in the cell.  That said, there is nothing in the facts showing that any action or reaction by Defendant Marr was directed at Milhouse.  Moreover, Milhouse has not alleged any injury from this incident.  Thus, the court finds that Milhouse has failed to set forth an Eighth Amendment claim with respect to this use of force incident of October 23, 2009, and qualified immunity shields Defendants from suit.  Defendants' motion for summary judgment on this issue will be granted.

### 2.     **Conditions of Confinement**

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society." *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989) (citing *Rhodes*, 452 U.S. at 346). Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. *Rhodes*, 452 U.S. at 348.

To establish an Eighth Amendment claim, Milhouse must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). This includes showing that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. In reviewing this type of claim, courts have stressed the

duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362-63. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise - for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (citations omitted). *See also Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990) (elaborating on factors to be considered, including "food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security and staffing") (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1025-26 & n.7 (3d Cir. 1988)).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the

28

conditions of confinement acted with "a sufficiently culpable state of mind."

*Wilson*, 501 U.S. at 298.  As described by the Supreme Court in *Farmer*, the

standard for determining deliberate indifference in a conditions of confinement

case is whether a prison official knew of and disregarded an excessive risk to an

inmate's health or safety.  *Farmer*, 511 U.S. at 837.  The Court added that "it is

enough that the official acted or failed to act despite his knowledge of a substantial

risk of harm."  *Id*. at 842.

Moreover, in assessing a claim of cruel and unusual punishment, a court

must bear in mind that "a prison's internal security is peculiarly a matter [for] the

discretion of prison administrators."  *Whitley v. Albers*, 475 U.S. 312, 321 (1986)

(quoting *Rhodes*, 452 U.S. at 349 n.14)).  Prison officials "should be accorded

wide-ranging deference in the adoption and execution of policies and practices that

in their judgment are needed to preserve internal order and discipline and to

maintain institutional security."  *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S.

520, 547 (1979)).  As a general rule, judges should not second guess decisions

made by prison administrators faced with disturbances or other emergencies

affecting prison security.  *Id*. at 322.

Proceeding under the above framework, the court will examine Milhouse's

conditions of confinement claims to determine whether Defendants are entitled to

qualified immunity, and whether summary judgment is warranted.

### a.   <u>Mattress</u>

Milhouse claims that he was subjected to cruel and unusual punishment when his mattress was removed from his cell for approximately two weeks.  In the instant motion, Defendants argue that Milhouse's claim is insufficient to pass the objective prong of the Eighth Amendment violation test because it is not sufficiently serious.  They claim that denial of a mattress for two weeks does not rise to the level of a constitutional violation.  In support, they cite to the following cases: *Lane v. Culp*, Civ. No. 05-576, 2007 WL 954101 (W.D. Pa. Mar. 28, 2007) (holding that denial of clothing and bedding for period of seven days does not rise to level of constitutional violation); *Castro v. Chesney*, Civ. No. 97-4983, 1998 WL 767467 (E.D. Pa. Nov. 3, 1998) ("Plaintiff's allegation that he was deprived of a mattress and blanket for a period of two days, even if proved, would not rise to the level of a constitutional violation."); *Stephens v. Cottey*, 145 F. App'x 179, 181 (7 Cir. Aug. 11, 2005) (holding no Eighth Amendment violation exists where prisoner spent three days without a mattress sleeping on a metal bedframe and five days with no bedframe sleeping on the floor); *Schroeder v. Kaplan*, 60 F.3d 834 (Table), 1995 WL 398878, at *2 n.6 (surveying district courts' findings on whether failure to provide a mattress violated the Eighth Amendment and concluding that

courts have "reached inconsistent conclusions").

Here, Milhouse claims that Defendant Gee took his mattress, but agrees with Defendants that it was taken at the direction of a Captain. After checking with the Captain, Defendant Gee was instructed to return the mattress to Milhouse and did so that same day. From the undisputed facts related to this claim, it is apparent that Defendant Gee and other staff members on the cell block knew that Milhouse's mattress was taken from his cell and looked into returning it to him. Pursuant to the case law related to the denial of bedding, the denial of Milhouse's mattress for a short period of time does not rise to the level of a constitutional violation. Thus, the court finds that Milhouse has failed to set forth an Eighth Amendment claim with respect to the denial of a mattress, and qualified immunity shields Defendants from suit. Defendants' motion for summary judgment on this issue will be granted.

### b.   Other Cell Conditions

Milhouse also claims that he was subjected to cruel and unusual punishment when Defendant Crawford assigned him to a cell with a dysfunctional shower for 19 days; when Defendant Crawford assigned him to a cell that did not have hot water; and when Defendant Marr failed to reset his toilet. He also claims that Defendant Crawford repeatedly denied him access to clippers for his hair. In the

31

instant motion, Defendants argue, *inter alia*, that Milhouse's claims do not rise to the level of deliberate indifference claims.

Viewing the facts in a light most favorable to Milhouse, the court finds the cell conditions to which Milhouse was exposed were temporary in nature, and, although unpleasant, were not sufficient to constitute a constitutional violation. *Rhodes*, 452 U.S. at 347; *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (rejecting Eighth Amendment claim where prisoner alleged that during a two week period he had only a thin blanket to protect him from frigid air entering unheated cell through window with broken latches, roaches crawled over him while he tried to sleep on badly torn mattress, urine and waste "encrusted" sink and toilet, trash, dirt, and debris covered floors, walls, and sink, and stench of waste came from broken toilet); *Davis v. Scott*, 157 F.3d 1003, 1004 (5th Cir. 1998) (holding three day placement in cell with blood on walls and excrement on floors did not meet Eighth Amendment's objective component); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (holding four day confinement in cell with overflowing toilet causing stench of feces and urine not Eighth Amendment violation); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (stating that intolerable conditions lasting twenty-four hours did not constitute Eighth Amendment violation); *Williams v. Lackawanna Cnty. Prison*, No. 4:CV-07-1137,

2010 WL 1491132, at *7 n.9 (M.D. Pa. Apr. 13, 2010) (providing inmate with

haircut only once a month does not constitute a violation of Eighth Amendment)

(citing *Vile v. Matty*, Civ. A. No. 90-6864, 1991 WL 137025, at *2 (E.D. Pa. July

17, 1991) (noting that "[h]aircut privileges . . . fall within the administrative

discretion of prison officials . . . [and that] plaintiffs were not denied haircuts));

*Schaeffer v. Schamp*, No. 06-1516, 2008 WL 2553474, at *6 (W.D. Pa. 25, 2008)

(holding placement in hard cell for ten days without mattress, soap, toilet paper,

running water, legal supplies, prescription medication, and food other than one

meal a day insufficient to state Eighth Amendment claim); *Briggs v. Heidlebaugh*,

No. Civ.A. 96-3884, 1997 WL 318081, at *3 (E.D. Pa. May 22, 1997) ("While a

delay of two weeks [of showering] may seem harsh, it does not give rise to a

constitutional deprivation."); *Difilippo v. Vaughn*, No. Civ.A. 95-909, 1996 WL

355336, at * 5 (E.D. Pa. June 24, 1996) (denying plaintiff's claim that the shower

temperatures were cold as not sufficiently serious to implicate the Eighth

Amendment).

Conditions must be far more extreme than those detailed by Milhouse. *See,

e.g.*, *McKeithan v. Beard*, 322 F. App'x 194, 202 (3d Cir. 2009) (finding objective

component of Eighth Amendment claim met where plaintiff was housed next to

psychotic inmates who smeared themselves with feces and stood at their cell doors,

placed feces in air vents, flooded tier with waste, and banged endlessly on sinks) (citing *Vinning-El v. Long*, 482 F.3d 923, 925 (7th Cir. 2007) (recognizing claim where plaintiff described floor covered with water, a broken toilet, feces and blood smeared on the wall, and no mattress); and *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (upholding Eighth Amendment claim where inmate was forced to remain in feces-covered cell for three days)); *Despain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001) (finding violation of Eighth Amendment where, for thirty-six hours, water overflow after riot flooded unit to standing depth of four inches, prisoners urinated into the water in which feces and uneaten food floated, water was nearly even with bottom of food carts, toilets would not flush, and inmate was afraid to eat); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (finding Eighth Amendment violation where prisoner was forced to live and sleep for two years in unlit cell with sewage back up and roach infestation); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) (forcing inmates to work in a shower of human excrement without protective clothing and equipment violated Eighth Amendment).

The above-referenced case law illustrates how far short Milhouse's claims fall.  The court does not find any support in the case law for the proposition that Milhouse's temporary lack of a working shower and hot water, access to a toilet

that only flushes every thirty minutes, or occasional denial of hair clippers constitute a serious objective deprivation of the minimal civilized measure of life's necessities for purposes of the Eighth Amendment.   Thus, the court finds that Milhouse has failed to set forth an Eighth Amendment claim with respect to these conditions of confinement, and qualified immunity shields Defendants from suit. Defendants' motion for summary judgment on these issues will be granted.

### 3.   <u>Verbal Harassment</u>

Milhouse claims that Defendants Gee and Moffett verbally harassed him on various occasions in late 2009.  Assuming these claims are true, it is well-settled that mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer.  *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation under § 1983); *Ruta v. Morris*, No. 3:cv-07-1832, 2007 WL 3342771, at *2 (M.D. Pa. Nov. 7, 2007) (claim of verbal assault fails to state a cognizable claim).  "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Verbal threats or harassment, with some reinforcing act accompanying them, however, may state a constitutional claim. *Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993).  For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. *See Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (guard put a revolver to an inmate's head and threatened to shoot); *Douglas v. Marino*, 684 F. Supp. 395, 397-98 (D.N.J. 1988) (prison employee threatened an inmate with a knife).  It has also been found that verbal harassment can rise to a constitutional level in a situation where fulfillment of the threat was conditioned on the inmate's exercising some constitutionally protected right. *Bieros v. Nicola*, 860 F. Supp. 226, 233 (E.D. Pa. 1994).

Milhouse asserts that Defendants Gee and Moffett verbally harassed him on several occasions in late 2009.  Specifically, he claims that on September 25, 2009, Defendant Gee stated loudly on the cellblock, "Milhouse, you want my dick in your mouth," (Doc. 30-2 at 2), and that on October 16, 2009, Defendant Gee called Milhouse a "rat," (*id*. at 3).  Further, Milhouse claims that on October 11, 2009, Defendant Moffett verbally harassed and assaulted Milhouse by calling him a "nigger and a piece of shit" and pushing him in the back, (*id*. at 6), and that Defendant Moffett threatened Milhouse on several occasions, with the last incident

occurring on November 10, 2009, (*id.*).  Initially, there is no indication that any of these verbal threats were accompanied by a reinforcing act involving a deadly weapon as contemplated under *Northington* and *Douglas*.  Moreover, as to Milhouse's claim against Defendant Moffett which involves a push to his back, in a similar case in this district, the court concluded that a verbal threat accompanied by a one-time slap to the back of the head did not set forth a viable constitutional claim.  *Cyrus v. Hogsten*, No. 4:06-cv-2022, 2007 WL 136747, at * 9 (M.D. Pa. Jan. 16, 2007) (McClure, J.).  Further, a review of the amended complaint also shows that the alleged threats were not conditioned on Milhouse's exercise of a constitutionally protected right.  Thus, the court finds that Milhouse has failed to set forth claims that rise to the level of a constitutional violation, and qualified immunity shields Defendants from suit.  Defendants' motion for summary judgment on these issues will be granted.

## IV.  <u>Conclusion</u>

For the reasons set forth herein, the motion for summary judgment will be granted in part and denied in part.  Specifically, the motion will be denied as to whether Defendants Gee and Crawford subjected Milhouse to excessive force on October 23, 2009 when Milhouse was escorted to a holding cell and placed in that

cell.  The motion will be granted as to the remaining Defendants and claims.

                      s/Sylvia H. Rambo
                      United States District Judge

Dated:  August 17, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,** | : | **CIVIL NO. 1:CV-09-02134** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **E. GEE,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## <u>O R D E R</u>

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) Defendants' motion for summary judgment (Doc. 42) is **GRANTED** with

respect to Defendants Marr, Miorana, Bledsoe, Trate, Heath, Perrin, Stewart,

Adam, and Moffett.

2) Entry of judgment on their behalf is **DEFERRED** pending further order

of court.

3) Defendants' motion for summary judgment (Doc. 42) is **DENIED** with

respect to Plaintiff's claim of excessive use of force on October 23, 2009, when

Defendants Gee and Crawford escorted Plaintiff to a holding cell and placed him in

that cell.

4)  The court will issue a separate scheduling order.


                                          s/Sylvia H. Rambo
                                      United States District Judge

Dated:  August 17, 2011.